**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**STERIS CORPORATION,**          )
                                 )
     **Plaintiff,**             )
                                 )
       **vs.**                  )    **Civil Action No. 06-83E**
                                 )
**INTERNATIONAL UNION, UNITED**   )
**AUTOMOBILE, AEROSPACE AND**    )
**AGRICULTURAL IMPLEMENT**       )
**WORKERS OF AMERICA, et al.,**     )
                                 )
     **Defendants.**

## OPINION

COHILL, D.J.

      Plaintiff Steris Corporation ("Steris") has filed a verified complaint to confirm an

arbitration award and for a preliminary and permanent injunction against any further

attempt to re-arbitrate or re-litigate the issue addressed in that arbitration (Doc. 2).

Plaintiff asks us to enjoin the arbitration of a second grievance filed by Defendants

United Automobile, Aerospace and Agricultural Implement Workers of America Local

No. 832 ("Local 832)" and International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America (collectively "Defendants.")

      Shortly after a hearing on Plaintiff's motion for a preliminary injunction was

scheduled, Defendants filed a motion to dismiss the complaint (Doc. 25) with

accompanying brief (Doc. 28). We granted the parties' joint motion to continue the

hearing until after a decision on the motion to dismiss.

      Plaintiff's have now filed a brief in opposition to the motion to dismiss (Doc. 34),

to which Defendants have replied. (Doc. 37).

      Our jurisdiction over Plaintiff's complaint is contested by this motion to dismiss.

We have jurisdiction to enforce collective bargaining agreements under Section 301 of

the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185. Venue is

proper under 29 U.S.C. § 185(c).

Having now considered the parties' submissions and the applicable law, for the reasons set forth below we will grant Defendants' motion and dismiss the complaint.

## I. Background

We take the facts on a motion to dismiss from the Complaint. Plaintiff Steris Corporation ("Steris" or the "Company") manufactures sterilization equipment for the healthcare, pharmaceutical and laboratory markets. (Compl. at ¶1). The Company has its principal place of business in Mentor, Ohio, and one of its main manufacturing facilities is located in Erie, Pennsylvania. (Compl. at ¶¶ 1, 3).

Defendant International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("International") is a labor organization within the meaning of 29 U.S.C. § 152(5), and has its principal place of business in Detroit, Michigan. (Compl. at ¶¶ 4,5). Defendant Local Union 832 of International ("Local") is a labor organization within the meaning of 29 U.S.C. § 152(5), and has its principal place of business in Erie, Pennsylvania. (Compl. at ¶¶ 5,6).

The American Arbitration Association ("AAA") was also named as a defendant. By letter dated April 19, 2006, the AAA notified the parties that it would not be appearing or otherwise participating in this litigation, and advised the parties that it was not a proper defendant. (Letter 4/19/06 Doc. 14). The AAA has not participated in briefing the issues before us.

Steris is party to a collective bargaining agreement (the "CBA" or the "Agreement") with Defendants International and Local, which is effective from June 23, 1999 to June 22, 2007. (Compl. at ¶ 10, Ex. A). The Agreement provides for a grievance procedure which culminates in final and binding arbitration. (Compl. at ¶¶ 11, 12). Article 10, Section D of the Agreement provides:

> The decision of the arbitrator shall be final, conclusive and binding upon the Union, its members and all Associates

2

> covered by this Agreement, as well as the Company and no
> appeal therefrom shall be taken from said decision. If an
> arbitrator's decision requires clarification, the parties, by
> mutual agreement may request of the arbitrator such
> clarification.

(Compl. at ¶ 14, Ex. A).

On December 20, 2004, Steris issued a memorandum concerning insurance coverage for employees on leave of absence from work, which announced that the Company would no longer pay the cost of insurance benefits for employees on extended leaves of absence. (Compl. at ¶ 16, Ex. C).

On December 21, 2004, the Local filed Grievance 2004-53 (the "First Grievance") as a "policy grievance" stating "(Policy) The Company is in breach of contract and good faith bargaining (if it) the Company tries to implement the memo of December 20, 2004 concerning insurance coverage during absences," and requested that the Company "cease and decist (sic) implementation and follow contract as negotiated and has been past practice (sic) make whole all losses." (Compl. at ¶ 15, Ex. B). This grievance was processed through the contractual grievance procedure, and submitted to arbitration through the American Arbitration Association ("AAA"). (Compl. at ¶ 17). Arbitrator Linda DiLeone Klein was selected by the parties to arbitrate the dispute. (Compl. at ¶ 18).

The First Grievance was heard on July 26, 2005, and Arbitrator Klein issued her award denying Local 832's grievance on October 10, 2005. (Compl. at ¶ 18, Ex. D). She defined the issue as "[d]id the Company violate the Collective Bargaining Agreement when on December 20, 2004, it announced that it would no longer pay the cost of insurance benefits for employees on extended leaves of absence? If so, what shall the remedy be?" (Compl. at ¶ 19, Ex. D). Arbitrator Klein held that the December 20, 2004 Memo did not violate the contract. Arbitrator Klein's opinion stated "[T]he Arbitrator is of the opinion that she has no alternative but to uphold the contract as written, 'overturn the practice' and allow the Company to correct any error in its prior enforcement of the

3

contract." (Compl. at ¶ 19, Ex. D at 27).

On November 1, 2005, the Local wrote to Arbitrator Klein and requested that she clarify her Opinion. (Compl. at ¶ 20, Ex. E). On November 4, 2005, the Company responded in opposition to the Local's request for clarification. (Compl. at ¶ 21, Ex. F). Since both parties did not agree to the request for clarification, Arbitrator Klein declined to clarify her opinion. (Compl. at ¶ 22, Ex. G).

The Local did not file a petition to vacate the Arbitrator's Decision within the 30-day time frame allowed by 42 Pa.C.S. § 7314 (2005). (Compl. at ¶ 23).

On January 26, 2005, the Local filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), charging that the Company's implementation of its December 20, 2004 memorandum constituted a unilateral discontinuance of insurance coverage for some employees on extended absences, and charging the Company with a refusal to bargain collectively and in good faith with the Local. (Compl. at ¶ 26, Ex. H).

On February 25, 2005, the NLRB deferred processing the charge, pending the processing of the December 21, 2004 Grievance which was awaiting arbitration. (Compl. at ¶ 27, Ex. I). On October 27, 2005, after being advised that Arbitrator Klein had issued her final and binding Decision, the NLRB refused to issue a complaint and dismissed the unfair labor practice charge. (Compl. at ¶ 28, Ex. J). In that decision, the NLRB stated that:

> The Arbitrator considered the issues which are factually
> parallel to the unfair labor practice allegation, and
> concluded that the Employer had not unilaterally changed
> an existing past practice.

(Compl. at ¶ 28, Ex. J).

The Local did not appeal the Decision of the Regional Director of the NLRB. (Compl. at ¶ 29). On October 27, 2005, Local 832 filed a filed a new grievance at No. 2005-29 (the "Second Grievance"). (Compl. at ¶ 30, Ex. K). For purposes of this motion

4

to dismiss, the Defendants accept Plaintiffs' characterization of the Second Grievance as concerning "the exact company policy that had been upheld by Arbitrator Klein in her final and binding award, dated October 10, 2005." (Compl. at ¶ 30, Defs.' Br. Doc. 25 at 3). The Second Grievance involved the same parties, the same factual background, and the same legal issues as the case decided by Arbitrator Klein. (Compl. at ¶ 32).

The Company denied the Second Grievance at each stage of the process, on the grounds that it had already been determined in favor of the Company in the final and binding arbitration decision of Arbitrator Klein on October 10, 2005. (Compl. at ¶ 33).

The Local submitted the Second Grievance to the AAA on December 16, 2005. (Compl. at ¶ 34. On December 30, 2005, Steris responded by stating that it needed more time to review the legal issues involved. (Compl. at ¶ 36, Ex. M). On January 30, 2006, the Company asked that the AAA discontinue processing the grievance because the underlying basis of the grievance was that Arbitrator Klein exceeded her authority in rendering her award in the First Grievance. (Compl. at ¶ 37, Ex. N).

On February 13, 2006, the Local responded that the matter should proceed, stating that the Company's attempt to have the dispute terminated prior to arbitration was an abrogation of the parties' agreement to arbitrate. (Compl. at ¶ 38, Ex. O). The AAA issued a letter on February 23, 2006, stating that in the absence of an agreement by the parties or a court order staying the matter, the AAA would proceed to administer the arbitration proceedings. (Compl. at ¶ 40, Ex. P).

The Company requested a two week stay to give it an opportunity to file the appropriate pleadings. (Compl. at ¶ 41, Ex. Q). This action followed.

In Count One, the Company seeks an order confirming the arbitration decision and award entered by Arbitrator Klein on October 10, 2005, in the First Grievance.

Count Two requests a preliminary injunction and permanent injunction, permanently enjoining and staying the Defendants from proceeding with the arbitration of

the Second Grievance.

In addition, Plaintiff seeks costs and attorneys fees.

The parties have agreed to continue the hearing on injunctive relief pending a decision on Defendants' motion to dismiss.

## II. Applicable Legal Standard

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2000) (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). Under this standard a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. *Nami*, 82 F.3d at 66.

While all factual allegations and reasonable inferences to be drawn therefrom are to be accepted as true, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997) (citations omitted). In ruling on a 12(b)(6) motion courts consistently have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law" or "sweeping legal

6

conclusions cast in the form of factual allegations." *Id.* at 906.

## III. Analysis

The complaint requests two forms of relief: in Count One, Steris asks this Court

to confirm the arbitration award entered on October 10, 2005 by Arbitrator Klein on the

First Grievance, and by Count Two, the Company seeks injunctive relief permanently

staying the Defendants from proceeding with arbitrating the Second Grievance.

Defendants seek dismissal of both counts.

### A.

We turn first to Defendants' position that we must dismiss Count Two because we

lack jurisdiction under the Norris-LaGuardia Act ("NLA") to enjoin arbitration of the

Second Grievance.

### (1)

Section 101 of the NLA provides:

> No court of the United States . . . shall have jurisdiction to
> issue any restraining order or temporary or permanent
> injunction in a case involving or growing out of a labor
> dispute, except in strict conformity with the provisions of
> this chapter; nor shall any such restraining order or
> temporary or permanent injunction be issued contrary to the
> public policy declared in this chapter.

29 U.S.C. § 101.

To determine whether the NLA precludes our jurisdiction to enjoin an arbitration,

the Third Circuit directs us to a four-step analysis derived from §§ 101-115 of the NLA:

> First, we must ascertain whether this action involves a
> "labor dispute" as that term is used in the NLA. . . . Second,
> we must decide whether the relief fashioned by the district
> court involves one or more injunctions as that term is used
> throughout the NLA . . . . Third, if we answer the first two
> questions affirmatively, we must then determine whether
> the district court complied with the procedural requirements
> of the NLA . . . . Fourth, if the district court did not comply
> with the NLA's procedural requirements, we must
> determine whether the dispute falls within a judicially-
> carved exception to the NLA.

7

*Lukens Steel Co. v. United Steelworkers of America (AFL-CIO)*, 989 F.2d 668, 676 (3d Cir. 1993) (internal citations omitted).

In the context of this motion to dismiss, this analysis requires that we determine 1) whether this is a labor dispute; 2) whether injunctive relief is requested; 3) whether the complaint alleges certain procedural requirements set forth in the NLA; and 4) if not, whether the underlying dispute falls into one of the judicially-created exceptions to the NLA.

The procedural requirements referred to above are set forth in Section 7 of the NLA. They divest courts of any jurisdiction to order injunctive relief unless the court makes all of the following findings of fact:

1)   unlawful acts will be committed unless restrained;

2)   substantial and irreparable injury will follow;

3)   with respect to each item of relief, greater injury will be inflicted upon complainant by denying the relief than will be inflicted on defendant by granting the relief;

4)   no adequate remedy exists at law; and

5)   public officers charged with protecting complainant's property are unable to do so.

*Lukens Steel Co. v. United Steelworkers of America (AFL-CIO)*, 989 F.2d 668, 677-78 (3d Cir. 1993) (quoting 29 U.S.C. § 107).

In addition, Section 8 of the NLA states that "[n]o restraining order or injunctive relief shall be granted to any complainant . . . who has failed to make every reasonable effort to settle such dispute either by  negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108.

There are certain judicially-created exceptions to the NLA's prohibition on injunctive relief. Relevant here is the "*Boys Markets*" exception. In *Boys Markets,* the

8

United States Supreme Court was required to reconcile the anti-injunction section of the NLA with the "subsequently enacted provisions of § 301(a) of the Labor Management Relations Act and the purposes of arbitration" and, in so doing, the Court carved out a narrow exception permitting injunctive relief. *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250 (1970). The CBA in place in *Boys Markets* included a provision forbidding a strike and requiring binding arbitration. The Supreme Court held that the union could be enjoined from striking in breach of the no-strike compulsory arbitration provision in the CBA, without violating the NLA. The Court reasoned that without the injunction the Union could simply ignore the compulsory arbitration clause in the CBA, and that this action would "seriously damage 'the congressional policy to promote the peaceful settlement of labor dispute through arbitration.'" *Fort Pitt Steel*, 598 F.2d at 1278 (quoting *Boys Markets*, 398 U.S. at 241). The Supreme Court emphasized that "the core purpose of the NLA, to foster the growth and viability of labor organizations, is not sacrificed by the limited use of equitable remedies to further the federal policy in favor of arbitration." *Fort Pitt Steel*, 598 F.2d at 1278 (citing *Boys Markets* at 251-52).

Therefore, as the Third Circuit has explained, the Supreme Court permits injunctive relief "where the involvement of the federal courts is necessary to further another fundamental federal labor policy – that of encouraging and promoting the voluntary resolution of labor disputes through arbitration." *Nursing Home & Hosp. Union v. Sky Vue Terrace, Inc.*, 459 F.2d 1094, 1098 (3d Cir. 1985) (citing *Boys Markets*, 398 U.S. 235 (1970)). This narrow exception applies only where the "collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure." *Boys Markets*, 398 U.S. at 253. The Supreme Court has further held that a strike in violation of a contract's grievance procedure may not be enjoined, unless the purpose is advancing the union position upon an arbitrable grievance which has not gone to

9

arbitration. *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397 (1976).

*Boys Markets* upheld an order enjoining a union from striking against an employer. Applying that decision, the Third Circuit has also concluded that under some circumstances an injunction may be granted against acts taken or threatened by an employer. *Fort Pitt Steel*, 598 F.2d at 1278-79; *United States Steel Corp. v. United Mine Workers*, 534 F.2d 1063, 1077 (3d Cir. 1976). To determine whether an injunction is appropriate under the *Boys Market* exception to the NLA, courts in this jurisdiction are instructed to examine: "1) whether the underlying dispute is subject to mandatory arbitration; 2) whether the employer, rather than seeking arbitration of his grievance, is 'interfer(ing) with and frustrat(ing) the arbitral processes . . . which the parties have chosen," and 3) whether an injunction would be appropriate "under ordinary principles of equity.*" Fort Pitt Steel*, 598 F.2d at1278-79(internal citations omitted). In other words, under certain circumstances an injunction may be granted against either the union or the employer without violating the NLA. The touchstone for injunctive relief is whether the party against whom an injunction is sought is frustrating the CBA by refusing to arbitrate and thereby interfering with the strong national policy favoring arbitration.

Whether a party has agreed "to arbitrate is a matter of contract construction and whether a dispute is arbitrable is a question of law for the court." *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Textron Lycoming Reciprocating Engine Division*, 929 F.Supp. 783, 788 (M.D.Pa. 1996) (quoting *Morristown Daily Record v. Graphic Communications Union Local 8N*, 832 F.2d 31, 33 (3d Cir. 1987)).

(2)

Using this legal framework, we turn to Defendants' argument that because this case involves a labor dispute covered by the Norris-LaGuardia Act we lack jurisdiction to grant the relief requested. Under step three of the analysis in *Lukens Steel*, the NLA

10

proscribes such injunctions unless the procedural requisites for injunctive relief set forth in § 7 of the statute have been met. Defendants assert that dismissal is proper because Steris has failed to allege these requirements.

Steris replies that the NLA does not bar injunctive relief in this case, because under step four of the *Lukens Steel* framework, the limited exceptions established in *Boys Markets* permit us to enjoin conduct that frustrates the arbitral process and grant the relief sought. Steris asserts that the procedural requisites found in § 7 of the NLA are not applicable here. (Pl.s' Br. at 7). Steris refers us to *Fort Pitt Steel* and the three-part test that this circuit has held must be met before a court has jurisdiction to order an injunction, as well as to other decisions in which the federal courts have enjoined labor activities without violating the NLA.

*Boys Markets* permits us to grant injunctive relief under certain limited circumstances, and in deciding whether an injunction is proper under that exception we must look to the Third Circuit's analysis in *Fort Pitt Steel*. Our first inquiry under *Fort Pitt Steel* is whether the subject of the underlying dispute is arbitrable. We find that it is. We note that in the discussion of *res judicata* elsewhere in its brief, Steris frames the underlying issue as "whether the parties decided to arbitrate the same grievance more than once because the losing party was dissatisfied with the first award(.)" (Pl.s' Br. at 27). We reject this argumentative characterization of the question before us. We find that the underlying dispute is whether the Second Grievance should proceed through arbitration, and that this underlying dispute is arbitrable. The parties have agreed for purposes of this motion to dismiss that the issues presented in the Second Grievance are identical to those in the First Grievance, and neither party opposed sending those issues to arbitration before Arbitrator Klein.

Under *Fort Pitt Steel*, we next consider whether the conduct frustrates the arbitral process the parties have bargained for. Both sides to this labor dispute assert that their

11

position best advances the national labor policy favoring arbitration. Steris states that it is "the party that is aligned with that policy, because Steris fulfilled its contractual promise to submit the dispute to final, conclusive, binding, and unappealable arbitration." (Pl.'s Br. at 6). Defendants argue that they are only seeking to have the Second Grievance heard in arbitration, in accordance with the CBA, and that seeking to enjoin this arbitration frustrates the national labor policy. (Defs.' Reply Br. at 2). Mindful of the strong federal policy favoring arbitration, we conclude that Steris' refusal to arbitrate the Second Grievance frustrates that policy, and that the Defendants, as the party against whom injunctive relief is sought in this case, actually further that policy by seeking to arbitrate the Second Grievance.

Finally, under *Fort Pitt Steel*, to determine whether the *Boys Markets* exception to injunctive relief is appropriate we must decide whether enjoining arbitration of the Second Grievance is proper under general principles of equity. We find that it is not.

A party seeking injunctive relief must establish that: 1) there is some likelihood of success on the merits; 2) the plaintiff will suffer irreparable harm if injunctive relief is denied; 3) the defendant will suffer greater harm if the injunction is issued; and 4) granting the injunction will be in the public interest. *Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000). Plaintiff has not shown that it will suffer irreparable harm if the injunction is denied and the Second Grievance goes to arbitration. This will simply maintain the status quo while the arbitral process that the parties have bargained for in the CBA goes forward.

Moreover, we conclude that enjoining arbitration of the Second Grievance, as Steris requests, would not be in the public interest. We have found no binding authority on all fours with the facts presented here, where the employer is seeking an injunction, not to prevent a strike or work stoppage, which would seemingly be permissible under *Boys Market* if supported by the CBA, but to prevent the union from seeking arbitration

12

of a grievance. Given the Supreme Court's direction that under limited circumstances injunctive relief may issue to **further** the fundamental labor policy of encouraging arbitration of disputes, we find that granting an injunction in this case would be against public policy, and enjoining arbitration would violate the traditional principles of equity. *Boys Markets*, 398 U.S. at 242.

For the foregoing reasons, after applying the three factors set out in *Fort Pitt Steel* we conclude that the *Boys Markets* exception does not encompass an employer's attempt to enjoin an arbitration that has been bargained for in the CBA, and therefore this case does not fall within the narrow exceptions to the prohibition on injunctive relief in the Norris-LaGuardia Act. Thus we lack jurisdiction to grant the relief demanded in Count Two of the complaint unless the conditions set forth in the § 7 of Act are satisfied, as Plaintiff argues they are.

(3)

We agree with the Defendants that the complaint does not allege facts to support the requirements of § 7, which must be met in order for a court to grant injunctive relief. There are no allegations that any unlawful acts will be committed against the Plaintiff's property unless an injunction is granted, or that the public officers charged with protecting that property cannot do so. *See* 29 U.S.C. § 107. This is hardly surprising, because this case does not concern an injunction to prevent an injury to property, such as a strike or labor violence, but instead attempts to enjoin arbitration. Nor has Steris complied with § 8 of the NLA, which directs that every effort be made to arbitrate this dispute. By this lawsuit, Steris is seeking to avoid arbitration.

Indeed, in its response in opposition to Defendants' motion to dismiss Steris does not even address the requirements in § 7, but instead asserts that they are not relevant under the analysis in *Fort Pitt Steel* because an injunction is permitted under *Boys*

13

*Markets*. [1]   Since we have concluded that the exception does not apply in this case, and these requirements have not been alleged, we will grant Defendants' motion to dismiss for lack of jurisdiction on this ground.

**B.**

In the alternative, Defendants argue that whether the prior arbitration decision has a preclusive effect on this case, as alleged in Count Two, is an issue for an arbitrator, and not this Court, to decide. Defendants' position is that whether an arbitration decision is *res judicata* so as to prevent a subsequent arbitration is a question of procedural arbitrability which must be decided by arbitration. Steris, however, argues that the second arbitration should be enjoined because the October 10, 2005 opinion has already decided the same issue. Steris asserts that *res judicata* is an issue of substantive arbitrability which must be decided by the Court.

(1)

Unless the parties clearly and unmistakably provide otherwise, it is the duty of the courts to determine the question of arbitrability – that is, whether a matter is arbitrable under a collective bargaining agreement. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 546047 (1964); *Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL-CIO v. RCA Corporation*, 516 F.2d 1336 1339 (3d Cir. 1975); *Teamsters Local 623 v. United Parcel Service, Inc.*, 786 F.Supp. 509, 511 (E.D.Pa. 1992). Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Local 827, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Verizon New Jersey, Inc.*, 458 F.3d 305, 3d Cir. 2006) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

---

[1]

"Thus (under *Fort Pitt Steel* and *Boys Markets*) the procedural requisites found in Section 7 of the Norris-LaGuardia Act that consume nearly one third of the Union's *Motion to Dismiss* (pp. 6-13), do not apply to this case under Third Circuit precedent." (Pl.'s Br. at 7).

14

(1960)). However, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

There is some disagreement in the federal courts on whether the preclusive effect of an arbitration award is a matter for the court or an arbitrator to decide. *Compare Teamsters Local 623 v. United Parcel Service, Inc.*, 786 F.Supp. 509, 512 (E.D.Pa. 1992) ("It is for the arbitrator to value the relevance and effect of the [prior] arbitration award and opinion) *with San Francisco Elec. Contr. Ass'n, Inc. v. International Brotherhood of Electrical Workers, Local No. 6*, 577 F.2d 529, 533 (9th Cir. 1978) ("If . . . the court is to have authority to enforce the award, it must have the authority to construe it").

The United States Supreme Court has not addressed this precise issue; however, it has recently reaffirmed that "'procedural questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *John Wiley*, 376 U.S. 543, 557 (1964)). The Court has also emphasized that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *Ehleiter v. Grapetree Shores, Inc.*, No. 06-2542 (3d Cir. filed April 6, 2007)).

(2)

We agree with the Defendants that in this jurisdiction, the preclusive effect of a prior decision is for an arbitrator to decide. "It is for the arbitrator to value the relevance

15

and effect of the [prior] arbitration award and opinion . . . ." *Teamsters Local 623 v. United Parcel Service, Inc.*, 786 F.Supp. 509, 512 (E.D.Pa. 1992) (citing *Electrical, Radio and Machine Workers, Local 103 v. RCA Corporation*, 516 F.2d 1336, 1340 (3d Cir. 1975)).

Even where the CBA contains a clause barring re-arbitration, courts in this jurisdiction have held that *res judicata* must be decided in arbitration. *Local 103*, 516 F.2d at 1340. In *Local 103*, the union sought to enjoin the employer's attempt to re-arbitrate a grievance on the grounds that the CBA prohibited the re-arbitration of issues that had been the subject of, or decided in, a previous arbitration. Despite that provision, the Third Circuit held that it was for an arbitrator to decide whether the "same question or issue" had actually been decided twenty-five years previously, and denied the injunction. *Local 103*, 516 F.2d at 1339. It was not an issue for the court.

Our Court of Appeals reached a similar result in *Butler Armco Independent Union v. Armco Inc.* 701 F.2d 253 (3d Cir. 1983). In that case, the union sought to enjoin the employer from consolidating two seniority units. The union argued that injunctive relief was appropriate because the issue in the dispute was identical to one resolved in a prior arbitration, and the CBA contained a clause prohibiting re-arbitration. 701 F.2d at 254. Relying in part on *Local 103*, the Third Circuit concluded that whether the clause prohibited the employer's conduct was a matter for an arbitrator to decide, and affirmed the denial of injunctive relief. 701 F.2d at 255-256. Steris argues that *Butler Armco* is inapposite, because that court did not decide the preclusive effect of a first arbitration award over a second, identical grievance. However, in that decision the Third Circuit specifically addressed and rejected without further discussion the argument that "the current dispute is not arbitrable simply because the same issue has been resolved in a prior arbitration" and stated that "[t]his argument would appear to be foreclosed . . . by our holding in *Metropolitan Edison v. NLRB*, 663 F.2d 478 (3d Cir. 1981)." 701 F.2d at 255.

16

Steris makes a similar argument in the instant case, and we must reject it under Third Circuit precedent.

We conclude that the law of this Circuit makes the preclusive effect of a prior arbitration an issue for an arbitrator to decide.

Steris directs us to several cases to support its position that this is a matter for the court to decide, but we are not persuaded. Steris argues that *San Francisco Elec. Contr. Ass'n, Inc. v. International Brotherhood of Electrical Workers, Local No. 6*, 577 F.2d 529, 533 (9th Cir. 1978) ("*IBEW, Local 6*") is on all fours with our case and requires that we decide the preclusion issue. We do not agree. In that case, the union filed a grievance contending that the employer's use of prefabricated lighting systems violated the terms of the CBA. The matter went to arbitration, and the grievance was denied. When the employer began installation, the union filed a new grievance. The employer refused to recognize the second grievance, arguing that the issue had already been resolved by arbitration. The union responded with a work stoppage to protest this refusal to arbitrate, and an injunction issued to stop the strike.

On appeal, the issue before the Ninth Circuit was whether the injunction was permissible as an exception to the NLA. In concluding that the strike could be enjoined under *Boys Markets*, the Ninth Circuit rejected the union's position that an arbitrator, and not the court, should decide how an arbitration award should be construed. The court reasoned that the substance of the second dispute had been resolved by arbitration of the first grievance, and that the union's insistence on a second arbitration violated the arbitration clause of the CBA. 577 F.2d at 533.

*IBEW, Local 6* is distinguishable from the case before us, because the injunction in that case was issued to end a union strike. Although Steris insists that this fact is irrelevant to the Ninth Circuit's holding, it significantly distinguishes the case from the facts before us. As we have previously explained, *supra* Section III A (2), the *Boys*

17

*Markets* exception to the NLA's general prohibition on injunctions permits injunctive
relief to end this sort of strike or work stoppage. Moreover, the Ninth Circuit's conclusion
is simply not the law in the Third Circuit. Courts here have held that the determination of
whether an arbitrator's award has a preclusive effect on a subsequent grievance is a matter
for arbitration, and not for judicial resolution. *Local 103*, 516 F.2d at 1339.

Steris also refers us to *Competitive Interiors v. Laborers' International Union of
North America, Local No. 1015*, an unpublished decision from the Northern District of
Ohio. No. 5:06CV370, 2006 WL 1314348 (N.D.Ohio February 17, 2006), in which two
unions disagreed as to which had jurisdiction to work on plaintiff's job site. One union
filed a demand for arbitration with the American Arbitration Association ("AAA"). The
other threatened to picket. Plaintiff's motion for a temporary restraining order argued that
both unions were members of a trade council, and were bound by its dispute resolution
mechanism and not by the AAA. In deciding to grant injunctive relief, the district court
reasoned that "[b]ecause Norris-LaGuardia does not prevent suits to compel arbitration, it
does not prevent suits to enjoin arbitration." 2006 WL 1314348 at *2. This case has no
bearing on our decision here. Not only is it an unpublished decision from another
jurisdiction, it involves two conflicting arbitration proceedings which could have led to
conflicting results. The court enjoined one arbitration with the AAA in order to determine
which arbitral process should resolve the dispute. The district court did not address
preclusion.

Steris next refers us to *Drake Motor Lines v. Highway Truck Drivers and Helpers
Local No. 107*, 343 F.Supp 1130 (E.D. Pa. 1972), which granted summary judgment in
favor of Drake Motor Lines on its suit to enjoin arbitration of a grievance. Writing in the
context of the summary judgment framework, the district court reasoned that no issue of
fact had been raised, and there was "an identity of the parties, the factual background, and
the legal issues." 343 F.Supp. at 1131. This case is not binding authority on us, and we

18

note that it was decided before the Third Circuit decided *Local 103*, which denied injunctive relief and reasoned that *res judicata* is an issue to be decided by an arbitrator, and not by the court. *Local 103*, 503 F.2d at 1339. *Drake Motor* does not compel the result Steris seeks.

Nor does *Local 616 v. Byrd Plastics*, 428 F.2d 23 (3d Cir. 1970) convince us that this is a matter for the court. In that case, the arbitrator dismissed a union grievance because procedural requirements had not been met, and the union refiled. The employer moved to dismiss the second grievance on the grounds that a prior arbitration award had already decided the same issue in the employer's favor. 428 F.2d at 24. The district court dismissed the complaint for failure to state a claim, but the Court of Appeals reversed. The Third Circuit reasoned that the first grievance had not been decided on the merits. Steris relies on dicta, stating that "[a] clause [in the CBA] stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of *res judicata*, and to bar reconsideration of the dispute fully decided on the merits." 428 F.2d at 26. However, this was not the basis of the court's decision, and the court went on to explain that unless the CBA explicitly stated that conditions such as this barred further arbitration, a grievance should go to arbitration. *Id.* *Byrd Plastics* does not hold that the court, and not the arbitrator, should decide the preclusive effect of a prior arbitration, and therefore it does not support Steris' position on this issue.

Nor does *Bell Atlantic-Pennsylvania, Inc. v. Communications Workers of America, Local 13000*, 164 F.3d 197 (3d Cir. 1999) support Steris' argument that *res judicata* is a matter for the court. That decision addresses arbitrability, and does not decide a question of preclusion.

Again, we reject Steris' narrow framing of the preclusion question before us as "whether the parties decided to arbitrate the same grievance more than once because the losing party was dissatisfied with the first award (.)" (Pl.s' Br. at 27). We recognize that

the language in the CBA states that "the decision of the arbitrator shall be final, conclusive and binding" and "no appeal therefrom shall be taken from said decision." (Compl. at ¶ 14, Ex. A). However, the union did not appeal Arbitrator Klein's decision. Moreover, there is no language in the CBA prohibiting re-arbitration, and the parties certainly could have bargained for such a provision. As the Third Circuit stated in *Byrd Plastics*, "unless such an intent [to bar further arbitration] is explicit, it does not oust a second arbitrator of jurisdiction." *Byrd Plastics*, 428 F.2d at 26.

Furthermore, preclusion is raised here as a defense to arbitrability, and the Supreme Court has held that there is a presumption that similar defenses shall be determined by an arbitrator, and not by the court. *Howsam*, 537 U.S. at 84. We therefore reject Steris' position that the court should decide the preclusive effect of a prior arbitration.

(3)

In reaching our decision, we agree with the district court's reasoning in *Local 623 v. United Parcel Service*, which also held that *res judicata* was a matter for an arbitrator to decide:

> [If the decision were left to the judiciary,] the courts would
> be drawn into a morass of labor contract interpretation
> issues. . . . The arbitrator, familiar with the specific labor-
> management situation, is in a much better position to make
> such decisions. Allowing the issue of *res judicata*, which is
> really a contract interpretation issue in this context, to
> remain with the arbitrator, will promote the strong
> congressional policy in favor of arbitration of grievances
> under a collective bargaining agreement.

*Local 623*, 786 F.Supp. 509, 513 (E.D. Pa. 1992) (citing *Local 103*, 516 F.2d at 1339).

Having concluded that *res judicata* is an issue for arbitration, we turn to the question we must determine: is the subject of the Second Grievance arbitrable under the CBA? We find that it is. The CBA does not expressly exclude this dispute from arbitration, and there is no evidence that the parties intended to do so. The parties agree

20

for the sake of this motion that the issues presented are identical, and neither party opposed arbitrating these issues in the First Grievance. Steris simply objects to re-arbitration. Moreover, where, as here, the CBA contains an arbitration clause, the presumption in favor of arbitrability is raised.

We conclude that since the issue presented in the Second Grievance is arbitrable, any questions of the *res judicata* effect of the arbitrator's award on the Second Grievance are matters for arbitration. Accordingly, we will grant Defendants' motion to dismiss Count Two of the complaint on this ground as well.

## C.

We now turn to Count One, which seeks confirmation of Arbitrator Klein's award. Defendants assert that this count must be dismissed because there is no justiciable case or controversy before the Court. Defendants point out that they have complied with the decision in the First Arbitration, and have neither challenged the arbitrator's decision, nor filed an action to vacate the award. Steris does not argue otherwise, and has not alleged non-compliance in its complaint. (Defs.' Br. at 4).

To establish a case or controversy for purposes of Article III, a plaintiff must show (1) an injury in fact which is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) likelihood that the injury will be redressed by a favorable decision. *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003).

Defendants direct us to decisions from several jurisdictions holding that confirmation is improper in the absence of any actual controversy regarding the validity of an award or compliance with it. *See Derwin v. General Dynamics Corporation*, 719 F.2d 484 (1st Cir. 1983); *Yellow Freight Systems v. Local Union 710*, 1994 WL 665086 (N.D.Ill.); *Bethlehem Steel Corp. v. United Steelworkers of America*, 1991 WL 338553 (D.Md. 1991). *See, also Local 2414 v. Consolidation Coal Co.*, 682 F.Supp. 399, 400

(S.D.Ill. 1988) (adopting *Derwin* and reasoning that "to confirm these awards in the absence of any concrete dispute would merely serve to circumvent Congress' goal of eliminating the cost and complexity of litigation from labor disputes").

We find the logic of *Derwin* persuasive on this issue. In the absence of allegations that Defendants have refused to comply with the award, Plaintiff cannot show that it has suffered an injury. Thus there is no controversy in this case that requires our enforcement of the arbitrator's decision. Steris' arguments do not convince us otherwise. Plaintiff simply reiterates the arguments we have already rejected: that the NLA does not divest this court of jurisdiction, and that the court, not an arbitrator, must determine any *res judicata* effect of the First Grievance.

Moreover, Steris seeks "a judgment confirming the first arbitration award (which would necessarily include the Court's declaration that the first award is final and binding)." (Pl.'s Br. at 7-8). Thus, Steris is not merely seeking routine enforcement of an arbitration award; as part of a confirmation it is asking this Court to determine that the award precludes a subsequent arbitration. As we have stated, any such declaration is for an arbitrator, and not for this Court to decide.

We agree with the Defendants that we lack jurisdiction under Article III to confirm the award, and we will dismiss Count One of the complaint.

## IV. Conclusion

For the reasons set forth above, we find that the allegations of the complaint in this matter fail to state a claim upon which we may grant relief. Count One must be dismissed because the complaint does not present a justiciable case or controversy. Count Two must be dismissed because whether the arbitrator's decision on the First Grievance has a preclusive effect on the Second Grievance is for an arbitrator, and not the courts, to decide; and because we cannot enjoin arbitration of the Second Grievance under the applicable law.

22

Accordingly, we will grant Defendants' motion to dismiss (Doc. 25) and will dismiss the complaint in its entirety. An appropriate Order follows.

April 9, 2007
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Judge

23